## 51472. SHEPHERD CONSTRUCTION COMPANY, INC. et al. v. STATE HIGHWAY DEPARTMENT.

STOLZ, Judge.

Appellants (contractors) sued the appellee (Highway Department) to recover claims for (1) retainage of $5,981.66 plus interest, (2) payment of $204,869.37 for "removal of muck and sanitary landfill" to extra depths, plus interest, and (3) payment of $1,000,064.50 for "overhaul on excavation" plus interest, arising out of a highway construction contract. The highway department admitted that the $5,981.66 retainage was owed, and paid the sum into the registry of the court. The contractors moved for summary judgment, the highway department for judgment on the pleadings. The superior court judge awarded the contractors the retainage ($5,981.66) with interest from date of judgment, denied all of the contractors' remaining motions and sustained the highway department's motion for judgment on the pleadings, which we treat as a motion for summary judgment. See Code Ann. §§ 81A-112 (c) and 81A-156. It is from this judgment that the contractors appeal.

1. The record shows that the highway department tendered the retainage ($5,981.66) on January 27, 1970. The contractors refused to accept it. Section 9.08 of the contract specifically provides that final payment is not due the contractors until one of the following occurs: (a) The treasurer receives the final release properly executed by the contractors; (b) The total amount due has been decided by agreement after review by the engineer of the contractors' written exceptions; (c) The amount due has been resolved by arbitration; or (d) The total amount due has been fixed by a court of proper authority. None of the foregoing had occurred prior to the superior court's judgment on July 14, 1975. Here, the contractors were notified that the work was accepted pursuant to the contract; the treasurer was notified of the contract's completion as to the "entire amount of every class of work performed and as to the value thereof." The treasurer then forwarded the final payment estimate to the contractors, enclosing a release to be executed by the contractors (item "a," supra). The contractors disputed the final payment,

refused to execute the final release and provided their written exceptions. Clearly, the parties were never in agreement as to the total amount due, as required by their contract. The judge of superior court correctly denied interest on the retainage ($5,981.66) from January 27, 1970, and awarded same from date of judgment. See *Firemen's Ins. Co. v. Oliver,* 182 Ga. 212 (184 SE 858); *Colevins v. Nat. Union Fire Ins. Co.,* 110 Ga. App. 533 (1) (139 SE2d 145).

2. The contractors' claim for $204,869.37 for the removal of muck and sanitary landfill, is based on Section 104.19 (b) of the 1956 Standard Specifications, Vol. 1, p. 123, which is a part of the contract. This provision of the contract relates to "Unclassified Excavation," and provides for payment for removal based on the unit price bid per cubic yard to the depth shown within the neat cross sections on the plans, and to a depth of 2 feet below those cross sections. Beyond the 2-foot depth, the unit price bid plus an increasing scale was applied as the depth increased in stated measurements. The highway department contends that muck and sanitary landfill removal are covered by special provisions of the contract. We note that in the Itemized Proposal (Exhibit 2 of contractors' complaint) a unit price of 40 cents per cubic yard is assigned to "unclassified excavation," while removal of both muck and sanitary landfill are compensated at $1.25 per cubic yard. The "Special Provisions" of the contract entitled "Excavation, Borrow, Waste, Muck and Sanitary Landfill" provide: "9. Muck Excavation. A. This item consists of removal and disposal of Class IV materials within the construction limits. B. Class IV material within the limits of construction will be removed for the full depth of such material in accordance with the detail shown on sheet No. six (6) of the plans. The engineer may direct that all or any portion of the material removed under this item be stockpiled for use in topping slopes or other areas which are to be grassed (See Par. 7 & 8 above). Any material removed under this item and not stockpiled for reuse shall be disposed of in accordance with Article 104.07 of the Standard Specifications. C. Material to be removed under this item will be measured as follows: . . . (2) The volume (in cubic yards) contained between the

original ground and the neat lines shown as the limits of muck removal on the detail of sheet No. six (6) in the plans will be computed by the average end area method. No payment will be made for material excavated before cross-sections are taken or for material removed outside the pay limits shown on sheet No. six (6) of the plans."

We further note that paragraph 12 of the aforesaid provisions provides: "Payment will be made under: Item No. 104 Unclassified Excavation — Per cubic yard; Item No. 104 Removal of Muck — Per cubic yard; Item No. 104 Removal of Sanitary Landfill — See Special Provision for this item." Examination of sheet No. 6 of the plans shows that the depth of material (muck and sanitary landfill) varies and that the basis of payment for the removal of both items is established "per cubic yard." The special provision for sanitary landfill (old garbage dump) removal provided that the material shall be taken out to full depth and cross section and that the *price bid per cubic yard* "shall include the cost of excavation, loading, spraying, hauling, . . . tools, equipment, labor, etc., as may be required to complete the work. . ."

We have previously noted that the contracts' "Itemized Proposals" separated unclassified excavation, muck removal and sanitary landfill removal; the compensation was set at 40 cents per cubic yard for the first item and $1.25 per cubic yard for the latter two. If the "sliding scale" urged by the contractors (contract, Section 104.19 (b)) were applicable, it would be based on 40 cents per cubic yard (Unclassified Excavation), not $1.25 per cubic yard (Muck and Sanitary Landfill removal). Moreover, the payment schedule set out in Section 104.19 (b) only applies to the removal of unsuitable material *not shown on the plans*. The removal of muck and sanitary landfill is shown on sheet No. 6 of the plans.

3. In approaching the contractors' claim of $1,000,064.50 for overhaul on borrow, it is helpful to understand some basic definitions. "Borrow" is dirt which is used for fill and is obtained from a pit located outside the right of way of the project. A "station yard" is the hauling of one cubic yard of borrow (dirt) the distance of one station.— 100 feet. The contractors claim they are entitled to be paid $.005 per station yard for 200,012,900.4 station

yards of overhaul on borrow. Special Provisions, Borrow Excavation is found in the Modification of Section 110 of the contract, which provides in part, "110.05. Payment: Borrow excavation will be paid for at the Contract unit price for Borrow Excavation when the Contract includes this Item, otherwise it will be included and counted for payment as Unclassified Excavation. Selected Borrow will be paid for at the Contract unit price established for this Item. In both cases the prices paid shall be full compensation for furnishing all labor, equipment, tools, superintendence and incidentals necessary to complete the work including overhaul unless overhaul for borrow excavation is set up in the contract as a separate pay item. If the Contractor is required to pay royalties for the material, the Pay Items will be listed with the words 'Including Material' added. Payment will be made under: Item No. 110-A. Borrow Excavation (Including Material) — per cubic yard. Item No. 110-B. Selected Borrow Excavation (Including Material) . . . per cubic yard." The Item Proposal previously referred to provides (1) "Borrow Excavation — Incl. Material — Sixty One Cents per Cu. Yd." with an amount bid of $2,011,658, and (2) "Overhaul on Excavation — One-half Cent per [station yard]" with an amount bid of $625.

The Special Provisions entitled "Excavation, Borrow, Waste, Muck and Sanitary Landfill" provide: "7. Stockpiling selected excavation or muck within right of way: During the progress of the excavation, the contractor may be directed by the engineer to stockpile selected unclassified excavation or muck material within the right of way suitable for topping out the roadbed or slopes. The stockpile shall be located as directed by the engineer. Also, the stockpile material is to be utilized as directed by the engineer. When material is stockpiled from excavated areas, it will be paid for as unclassified, or muck, excavation when placed in stockpile, and shall also be paid for as unclassified excavation when removed from stockpile. When hauling from stockpile of the selected material, the contractor will be paid at the rate of one-half cent ($0.005) per station yard for all overhaul as set forth in Section III of the State Standard Specifications dated May 1, 1956. No overhaul will be paid for material hauled

to stockpile. 8. Excess haul of selected excavation within right of way: When it is directed by the engineer to haul selected excavation from the original source within the right of way directly to a designated area, for topping out the roadbed or slopes, all haul in excess of that shown in the plans for this material shall be paid for at the rate of one-half cent ($0.005) per station yard. . .11. Overhaul: Except as set forth in Par. 7 & 8 above, no separate payment will be made for overhaul connected with any excavation work on this project." That borrow is an excavation has already been documented. Paragraphs 7 and 8, quoted supra, refer to muck and selected un-classified excavation, and provide for overhaul out of, not into, the stockpile. Paragraph 8 refers to selected excavation or muck removal from *within* the right of way to its point of use. Borrow is taken from a source outside the right of way. This is made clear beyond dispute by the language "Excavation obtained from the Right of Way and/or easements adjacent to the Right of Way shall not be classified as Borrow Excavation." Section 110.01. Thus, paragraphs 7 and 8 do not refer to "borrow."

Another "Special Provision" of the contract (Modification of Section 6. Control of Materials) relates to sources of materials outside the right of way, authorizes the use of earth materials for borrow (Section 6b), and provides that "[n]o separate payment will be made to the contractor for clearing and grubbing, stripping excavation, *overhaul, special overhaul* or haul roads. The cost of these items and other incidentals *shall be included in the price bid* for the other pay items pertaining to this part of the work." (Emphasis supplied.)

The record establishes that from January, 1964 through March, 1967 the contractors performed the work of obtaining "borrow" and were paid each month. Also, each month from January, 1964 through December, 1967, the contractors received a statement which showed no payment for overhaul on borrow. The contractors received $2,407,219.82 for "borrow" pursuant to the contract. This is approximately 17% more than the $2,011,658 contained in the unit price bid in the "Itemized Proposal" for "Borrow Excavation." The contractors claim $1,000,064.50 for overhaul on borrow (200,012,900.4

station yards at $.005 per station yard). This claim is approximately 1,600 times greater than the $625 (125,000 station yards at $.005 per station yard) contained in the unit price bid in the Itemized Proposal for overhaul on excavation.

From the foregoing, we conclude that the contracting parties did not intend that the $.005-per-station-yard-charge for "overhaul on excavation" be added to the 61 cent-per-station-yard-charge for "borrow excavation."

4. The trial judge did not err in entering judgment for the contractors for $5,981.66 with interest from date of judgment and sustaining the highway department's motion for summary judgment denying the contractors' remaining claims.

*Judgment affirmed. Bell, C. J., Pannell, P. J., Deen, P. J., Quillian, Clark, Webb and Marshall, JJ., concur. Evans, J., dissents.*

ARGUED OCTOBER 30, 1975 — DECIDED MARCH 1, 1976 — REHEARING DENIED MARCH 30, 1976 —

*Smith, Currie & Hancock, Robert B. Ansley, Jr., Bouhan, Williams & Levy, James M. Thomas,* for appellants.

*Arthur K. Bolton,* Attorney General, *William B. Brown,* for appellee.

EVANS, Judge, dissenting.

This case involves a suit for unpaid amounts due on a contract of construction between the State Highway Department of Georgia and Shepherd Construction Company, Inc. and REA Construction Company. The contractors moved for summary judgment and the Highway Department moved for judgment on the pleadings, admitting that it owed the sum of $5,981.66. The trial judge, after hearing these two motions, granted a partial summary judgment and awarded the contractors the sum of $5,981.66 without interest until judgment. The judge then dismissed the remaining claims of the

plaintiffs, 'which was in effect, the grant of summary judgment to defendant. The plaintiffs appeal.

The majority of this court affirm the entire judgment. I dissent, because I feel a jury question is involved.

1. The first division of the majority opinion is based on *Firemen's Ins. Co. v. Oliver,* 182 Ga. 212 (184 SE 858), cited in *Colevins v. National Union Fire Ins. Co.,* 110 Ga. App. 533 (1) (139 SE2d 145). That case was based upon an action on a policy of insurance and held that the claim did not become a liquidated demand until the jury verdict. These cases are not controlling here, for the Highway Department, in answering the complaint, admitted it owed the sum of $5,981.66, thus admitting this liquidated claim. The majority contends that the Highway Department had tendered this amount on January 27, 1970, and the contractors had refused to accept it. It is not at all clear when this amount became due. Since this part of the action was a liquidated demand, interest may be due thereon.

2. The contractors claim the sum of $204,869.37 for the removal of extra muck and sanitary landfill which may or may not have been covered by the contract but was "over-run" and which they contend was removed and for which they have not been paid. They also seek payment for more than one million dollars for additional "overhaul" on excavation.

3. The contract in this case is very voluminous, and from a cursory reading of the majority opinion, one is impressed that said contract is ambiguous. Ordinarily a judge, and not a jury, construes the meaning of a contract, except where there is an obscurely written word. See Code Ann. § 20-701. But the cardinal rule of construction is to ascertain the *intention* of the parties (Code Ann. § 20-702), and if because of the ambiguity of the contract such intention becomes a question of fact, of course a jury must determine such intention.

4. I do not believe a summary judgment for the plaintiff should have been granted (except as to the admitted sum due), nor do I believe judgment on the pleadings for defendant should have been granted, but to the contrary, the ambiguities and the intentions of the parties should have been decided by a jury as issues of fact.

5. The contract refers to and makes a part thereof Volumes 1 and 2 known as "Standard Specifications — Construction of Roads and Bridges," and all of this must be construed in connection with the contract.

6. One of the chief bones of contention here is the plaintiff's claim that it is entitled to more than one million dollars balance, over and beyond the amount contemplated by his contract, because of "over-run" (expense made necessary because of extra work not specifically contemplated by the contract) which was incurred in removing and working with certain muck over which the new highway was constructed. The contract did provide as to how much per yard would be paid for certain removal of muck, but the contract is ambiguous as to how much muck and landfill might be removed by plaintiff and compensation required of defendant in the event of extra amounts encountered. To say that over a million dollars is due beyond the amount provided by the regular contract somewhat strains the credulity of the average person. The question now arises as to whether the plaintiff could have excavated and hauled (over-haul that is) 100 million dollars worth of muck and excavation and should receive compensation therefor as "over-run" and over-haul on excavation. Surely some limit was implied. Could the plaintiff dig down as deep as one mile or five miles and continue to remove muck at the expense of the taxpayers of Georgia? There are other ambiguities, but this one alone suffices to show that a jury should have been called in to decide as an issue of fact this ambiguity in the contract. See *Tarbutton v. Duggan,* 45 Ga. App. 31 (7) (163 SE 298); *Pinkerton & Laws v. Atlantis Realty,* 128 Ga. App. 662, 666 (3) (197 SE2d 749); *Stokes v. Walker,* 131 Ga. App. 550, 552 (2) (206 SE2d 564).

7. The contractor has been paid over $7 million for his work, and now we need a jury to decide before he collects an additional $205,869.37 on one phase of this contract and over a million dollars on another phase of the contract.

8. For the foregoing reasons, it is unnecessary for me to attempt to analyze or criticize the findings and opinion by the majority, so I simply dissent.